PER CURIAM.
|, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Gregory J. Avery, an attorney licensed to practice law in Louisiana.
By way of background, the ODC filed multiple counts of formal charges against respondent in November 2001. In his answer • to the formal charges, respondent alleged that he was suffering from depression, anxiety, and other conditions which had rendered him “currently medically disabled” and unable to participate in the disciplinary proceedings. Respondent then filed a petition in this court, seeking to be transferred to disability inactive status. On November 20, 2002, we transferred respondent to interim disability inactive status pending a hearing to determine the validity of his claim of an inability to assist in his defense due to mental incapacity. In re: Avery, 02-2683 (La.11/20/02), 834 So.2d 971. Following the hearing, we transferred respondent to disability inactive status and ordered that the pending disciplinary proceedings be stayed. In re: Avery, 02-2683 (La.3/26/03), 841 So.2d 769.
In 2006, respondent filed a petition seeking to be reinstated to active status, in which he asserted that his disability had been removed. Following a hearing on the petition, this court reinstated respondent to active status on February 14, 2007. In re: Avery, 06-1816 (La.2/14/07), 948 So.2d 1075. At that time, the ODC elected not to proceed with the formal charges filed in 2001.
|2In March 2011, the ODC filed seven counts of formal charges against respondent, all arising from complaints received after he was reinstated to active status. Respondent was served with the formal charges but failed to answer, and consequently, the factual allegations of the formal charges were deemed admitted, as follows:
FORMAL CHARGES

Count I

In March and April 2009, respondent wrote checks to his landlord, Rolando Hernandez, in payment of his rent. These checks, totaling $2,400, were subsequently dishonored by respondent’s bank for insufficient funds.
In May 2009, Mr. Hernandez filed a disciplinary complaint against respondent and attached copies of the NSF checks, which the ODC determined had been written on respondent’s client trust account.[1] The ODC then obtained the trust account bank records and discovered checks which had been issued in payment of respon *567 dent’s personal expenses and checks which had been signed by respondent’s girlfriend, who is not a lawyer.[2] Furthermore, the ODC discovered that between January and March 2009, the balance of the trust account dropped below the amount respondent was holding on behalf of a client, Raymond Amedeo, whom he had represented in a property damage claim. Respondent did not deliver the entirety of the settlement proceeds to Mr. Amedeo and failed to provide the ODC with requested documentation concerning the settlement of Mr. Amedeo’s claim.
IsThe ODC alleges that respondent’s conduct violated Rules 1.15 (safekeeping property of clients or third persons), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count II

In September 2009, Richard Jer-rell, Jr. retained respondent to defend him in a criminal case, paying him $1,500. The court minutes reflect that respondent was not present for Mr. Jerrell’s arraignment on November 8, 2009, and that another attorney entered a not guilty plea on Mr. Jerrell’s behalf. Thereafter, when Mr. Jerrell could not reach respondent to discuss his ease, he hired a new attorney to represent him. Respondent has not refunded any portion of the legal fee Mr. Jerrell paid. He also failed to respond to the disciplinary complaint filed against him by Mr. Jerrell in December 2009.
The ODC alleges that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), and 8.1(c) of the Rules of Professional Conduct.

Count III

In July 2009, Jason Brimer retained respondent to handle an intra-family adoption matter, paying him $750. Thereafter, respondent neglected the matter and failed to communicate with his client. Respondent also failed to refund any portion of the legal fee Mr. Brimer paid, and failed to respond to the disciplinary complaint filed against him by Mr. Brimer in December 2009.
The ODC alleges that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c) of the Rules of Professional Conduct.

_[4Count IV

In June 2009, Geraldine Henkel retained respondent to pursue an appeal of a civil judgment rendered against her and to file a legal malpractice suit against her former attorney. Respondent agreed to accept the legal malpractice matter on a contingency fee basis, and in connection with the appeal, Ms. Henkel paid respondent an advance deposit of $2,500, from which fees were to be deducted at the rate of $175 per hour. Respondent failed to place these funds in his client trust account, as required by the Rules of Professional Conduct, and instead immediately cashed Ms. Henkel’s check. Thereafter, respondent delayed in filing the necessary brief with the court of appeal and failed to keep Ms. Henkel informed as to the status of her case.[3]
*568 In connection with the legal malpractice matter, respondent did not provide Ms. Henkel with any information concerning the status of the matter, causing Ms. Henkel to become concerned that the claim had prescribed.
In May 2010, Ms. Henkel filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint. In December 2010, respondent sent Ms. Henkel a billing statement in which he claimed to have provided legal services in the appeal matter from June through October 2010. However, at that point in time, respondent was ineligible to practice law,[4] and the ODC therefore contends that the fees charged for these services were unreasonable.
The ODC alleges that respondent’s conduct violated Rules 1.3, 1.4, 1.5(a) (charging an unreasonable fee), 1.5(f)(8) (payment of fees in advance of services), 1.15(a), 3.2 (failure to make reasonable efforts to expedite litigation), 5.5(a) | .^engaging in the unauthorized practice of law), 8.1(c), and 8.4(c) of the Rules of Professional Conduct.

Count V

As noted in connection with Count IV, supra, respondent was declared ineligible to practice law between June 19, 2010 and October 4, 2010 for failure to comply with his professional obligations. Nevertheless, respondent continued to practice law during the period of his ineligibility. Specifically, on June 24, 2010, respondent appeared at a hearing before a domestic commissioner in Jefferson Parish on behalf of his client in a divorce matter. He also filed pleadings on behalf of his client in August 2010.
Further with respect to the June 24, 2010 hearing, the record reveals that the commissioner halted the proceeding because respondent raised an exception during the testimony. The commissioner advised respondent that exceptions had to be in writing and gave him two weeks to file a written exception. However, respondent never filed the exception, and thereby delayed the proceeding. Respondent also delayed the proceeding by refusing to provide opposing counsel with a physical address so that he could be served with pleadings.
In May 2010, a disciplinary complaint was filed against respondent on behalf of the opposing party in the divorce. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.1 (meritorious claims and contentions), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 3.4(e) (in trial, alluding to a matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence), 5.5(a), 8.1(c), and 8.4(c).
| s Count VI
In 2007, John Barbetti, Jr. retained respondent to represent him in an ongoing personal injury matter. In September 2010, Mr. Barbetti filed a complaint against respondent with the ODC, alleging that during the course of the representation, he had difficulty communicating with respondent and received little information about the status of his case. The matter *569 finally settled, but according to Mr. Bar-betti, the settlement payments were delayed because respondent and his former employer, attorney Mark Smith, could not reach an agreement as to their respective fee interests. Mr. Barbetti also expressed some concern with regard to the payment of his medical bills out of the settlement proceeds. Respondent failed to cooperate with the ODC in its investigation of the complaint.
In connection with Mr. Barbetti’s case, the trial court issued an order requiring respondent to deposit the attorney’s fee portion of the settlement into the registry of the court. Respondent failed to do so, and in September 2010, he was held in contempt for his “willful” failure to comply with a court order.
In addition, in June 2009, respondent issued two checks to Mr. Smith from his client trust account to reimburse fees and costs associated with a matter in which Mr. Smith had an interest. These checks, totaling $1,150, were subsequently dishonored by respondent’s bank for insufficient funds.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(a), 1.15(d), 3.4(c), 8.1(c), and 8.4(c).

Count VII

In August 2009, Dr. Gordon Johnson retained respondent to represent him in a civil matter. Respondent agreed to handle the case on a contingency fee basis, but required Dr. Johnson to advance certain funds at the outset of the case. 1 .¡Accordingly, on September 1, 2009, Dr. Johnson wrote respondent a check in the amount of $2,000. He gave respondent a second check in the amount of $1,500 on October 27, 2009. Respondent apparently cashed these checks and did not deposit the funds into his client trust account.
Thereafter, Dr. Johnson met with respondent on two occasions, but he then began to have difficulty contacting respondent. Eventually, Dr. Johnson could not reach respondent at all, and it does not appear that any work was performed on his legal matter.
In October 2010, Dr. Johnson filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleges that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(4), 1.5(f)(5), 3.2, 8.1(c), and 8.4(c).
DISCIPLINARY PROCEEDINGS
As previously discussed, respondent failed to answer the formal charges filed against him, and consequently, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

The hearing committee adopted the ODC’s deemed admitted submission by reference and recommended that respondent be permanently disbarred. The | scommittee also recommended that respondent be required to refund the unearned portion of the legal fees paid by his clients.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

*570
Disciplinary Board Recommendation

After review, the disciplinary board determined the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence. Based on the deemed admitted facts, the board determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board further determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted knowingly and intentionally, and his misconduct resulted in actual harm. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction in this matter is disbarment.
In aggravation, the board found the following factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1978), and indifference to making restitution. The board found the only applicable mitigating factor is the absence of a prior disciplinary record.
Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended he be permanently disbarred. The board also recommended respondent be ordered to refund any unearned fees and make restitution to the clients whose funds he converted, and pay the costs and expenses of this proceeding.
IflFollowing the filing of the disciplinary board’s recommendation, respondent sent a letter to this court seeking additional time to respond to the complaints which form the basis of the formal charges against him. By way of explanation for his request, respondent stated that since 2009, he has suffered a recurrence of the disabling medical issues that led to his original transfer to disability inactive status in 2002. By order dated April 11, 2012, we gave respondent thirty days “to file a supplement and any supporting documentation.”
Thereafter, respondent filed a supplement in which he responded to each count of the formal charges. He also submitted a request to be transferred to disability inactive status. On September 12, 2012, we ordered that respondent be transferred to interim disability inactive status and remanded the matter for a hearing on his claim of disability. The hearing was held on October 30, 2012; however, respondent did not appear. Accordingly, the hearing committee submitted a recommendation to this court that respondent’s request for disability inactive status be denied. Respondent objected to the committee’s recommendation and urged the court “to allow his Disability Inactive Status to continue indefinitely until proven otherwise by proper process.”
On January 25, 2013, we issued an order immediately reinstating respondent to active status from interim disability inactive status. Our order further provided that “before the court considers the merits of this disciplinary proceeding, respondent and the Office of Disciplinary Counsel shall submit written briefs addressing whether the sanction recommended by the disciplinary board is appropriate. The briefs shall be filed in this court no later than twenty days from the date of this order.” The ODC timely filed its brief in response to the order, urging that permanent disbarment be imposed. Respondent filed nothing for the court’s consideration.
*571 linDISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(8) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent wrote checks for personal expenses drawn on his client trust account and otherwise improperly handled his trust account; neglected legal matters, failed to communicate with his clients, and failed to refund the unearned portion of the fees he was paid; practiced law while he was ineligible to do so; and failed to cooperate with the ODC in its investigation.. Based on these facts, respondent has violated the Rules of Professional Conduct as charged by the ODC.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the) n profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession, causing actual harm. The baseline sanction for this type of misconduct is disbarment.
In its report, the disciplinary board concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar. We agree. Respondent repeatedly mishandled his client trust account and converted client funds to his own use. As such, we find that respondent’s conduct amounts to repeated or multiple instances of intentional conversion of client funds with substantial harm, as contemplated by Guideline 1 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E.
Respondent’s conduct demonstrates a disregard for his clients and for his duties as an attorney. In order to protect the public and maintain the high standards of the legal profession in this state, respondent must not be allowed the opportunity to return to the practice of law in the future.
*572 Accordingly, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to his victims.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the brief filed by the Office 112of Disciplinary Counsel, it is ordered that the name of Gregory J. Avery, Louisiana Bar Roll number 2618, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The checks themselves do not contain a notation that they are drawn on a client trust account, but the account number on the checks matches the account number on the bank statement for the "IOLTA Trust Account” maintained by respondent at Statewide Bank in Covington.

. Although respondent testified in a sworn statement that he had authorized his girlfriend to sign the checks in question, this practice is contrary to Rule 1.15(f) of the Rules of Professional Conduct, which provides that every check "from a client trust account shall be personally signed by a lawyer ...”

. In March 2011, the court of appeal affirmed the judgment against Ms. Henkel and awarded the appellees an additional $2,500 in attor *568 ney's fees “for the work necessitated by Henk-el's frivolous appeal." Rockett v. Neupert, 10-1311, 10-1312 (La.App. 1st Cir.3/25/11), 58 So.3d 1154 (not designated for publication).

. Respondent was ineligible to practice law from June 19, 2010 through October 4, 2010 for failure to comply with the mandatory continuing legal education requirement.